```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
KENNY ALEXIS,                             :
                                          :
                         Petitioner,      :    11cv5010 (DLC)
                                          :
           -v-                            :    OPINION AND ORDER
                                          :    ACCEPTING REPORT
PATRICK GRIFFIN,                          :    AND RECOMMENDATION
                                          :
                         Respondent.      :
                                          :
------------------------------------------X
```

DENISE COTE, District Judge:

On July 18, 2014, Magistrate Judge Maas issued a report ("Report") recommending that Kenny Alexis's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that no certificate of appealability issue. Alexis v. Griffin, No. 11cv5010 (DLC) (FM), 2014 WL 3545583 (S.D.N.Y. July 18, 2014). On August 13, 2014, Alexis submitted an objection to one portion of the Report. Having considered Alexis's objection, the Report is accepted. The petition is denied and no certificate of appealability shall issue.

BACKGROUND

Familiarity with the case, as described in the Report, is presumed. Here, only the facts pertinent to the ensuing discussion are presented.

Charges were brought against Alexis in New York state court in connection with a one-day crime spree in which he engaged in

a series of knife attacks at various locations in Manhattan.  In June 2006, shortly after Alexis's arraignment, the trial court <u>sua sponte</u> ordered an initial competency evaluation.  Then, in April 2008, at defense counsel's request, the court ordered a second competency evaluation.  On both occasions, Alexis was deemed competent.  In September 2008, pursuant to N.Y. Crim. Proc. Law § 730.30(2), the court held a competency hearing because Alexis disputed the findings of the second evaluation.

At the hearing, doctors for the People testified that although Alexis had a history of paranoid schizophrenia, he nonetheless was capable of understanding the proceedings against him and assisting in his defense.  They concluded that Alexis was malingering -- exaggerating his cognitive disabilities -- because of frustration with the criminal proceedings.  The doctors noted that Alexis had not demonstrated any psychotic symptoms in the months prior to the second evaluation and did not require medication at the time of that evaluation.

A doctor for Alexis, by contrast, testified that Alexis's mental illness would impair his ability to assist in his defense, thereby rendering him unfit to stand trial.  This doctor did not believe that Alexis was malingering.  On the other hand, the doctor admitted that Alexis seemed to understand the roles of defense counsel, prosecutor, judge, and jury.

The court emphasized that Alexis's paranoid schizophrenia was not, in and of itself, sufficient to render him unfit to stand trial; rather, the question was whether the mental illness impaired his ability to cooperate in the judicial process.  In this regard, the court credited the testimony of the People's doctors, finding that Alexis had refused to cooperate because he was "unhappy . . . with his present situation . . . [and] with the amount of time that he faces should he be convicted."  Accordingly, the court ruled that Alexis was competent.

Following this ruling, Alexis received further inpatient treatment at a psychiatric hospital.  Nonetheless, defense counsel requested no further competency inquiry and the case proceeded to trial.  The fact of Alexis's hospitalization was later brought to the attention of the trial court.

In January 2009, jury selection began.  Alexis's behavior in the courtroom was erratic.  On multiple occasions he interrupted exchanges between the court and counsel with indications that he was not ready to proceed to trial -- a contention that he had never before raised.  The court maintained that this sudden change in Alexis's behavior on the eve of trial seemed "too much of a coinciden[ce]."  The court cautioned Alexis that his erratic behavior could cause him to be removed from the courtroom and directed that jury selection proceed.

The morning session of jury selection went forward without incident. Indeed, the court noted that Alexis had been "well behaved" throughout the proceedings. About halfway through the afternoon session, however, Alexis interrupted the proceedings to request a new lawyer. The court reminded Alexis that when it had previously granted his request for new counsel it had cautioned that no further requests would be entertained. Near the end of the day, Alexis again attempted to interrupt the proceedings, requiring court officers to forcibly make him sit. After the prospective jurors were released for the evening, Alexis complained that he was having difficulty breathing. The court offered Alexis a drink of water, but warned that it would not tolerate further disruptive behavior.

The next day jury selection resumed. Soon after proceedings commenced, Alexis stood and began to struggle with court officers, who eventually removed him from the courtroom. At the court's suggestion, defense counsel informed Alexis that the trial would continue in his absence if he was unable to behave. Following this conversation, defense counsel advised the court that Alexis had indicated he was "done for the day" but would return to court the following morning. After another recess, however, defense counsel reported that Alexis wished to return to the courtroom. When he returned, the court again explained that he had a right to be present provided that he did

not cause any "commotion" in front of the jury. Alexis indicated that he understood this instruction and would "try" to behave appropriately.

At the end of the day, the court noted that Alexis had been able to sit quietly with no problems. Nonetheless, the court reiterated its expectations regarding appropriate courtroom conduct. Alexis indicated that he understood that while he would be permitted to speak with his lawyer during the proceedings, he could not shout or stand without permission.

When trial began the following morning, the court asked defense counsel to remind Alexis that he would be expected to maintain good behavior throughout the proceedings. Alexis responded by asking whether he could call his family to come pick him up. After advising Alexis that this would not be possible, the court reminded Alexis that he needed to behave in the jury's presence. As the court greeted the jury, however, Alexis stood, began to speak, and struggled with court officers. The court excused the jury and granted defense counsel's request to speak privately with Alexis. After this conversation, defense counsel was unable to assure the court that Alexis would behave. The court therefore directed that Alexis be held outside the courtroom, in close proximity, while the trial proceeded. The court asked defense counsel to explain to Alexis

that whenever he was willing to abide by the "rules of conduct," he could return to the courtroom.

While in an adjoining room, Alexis evidently began making loud noises. The trial judge instructed defense counsel to tell Alexis that he would be removed from the vicinity if he could not remain quiet. Counsel reported that he "did not get a response one way or the other" from Alexis. The trial then commenced with Alexis outside the courtroom.

During a mid-morning recess, defense counsel spoke with Alexis but was unable to secure an assurance that he would behave properly. Nonetheless, at counsel's request, the court permitted Alexis to return to the courtroom, again remarking that Alexis's recent misbehavior, which was a departure from his behavior during numerous previous appearances before the court, seemed "too much of a coincidence."

This pattern continued over the next several days. At times, Alexis expressed interest in attending the trial and stated that he understood that he would need to behave. At other times, Alexis refused to attend. As a result, Alexis did not hear the testimony of ten witnesses.

At the end of trial, the jury returned a guilty verdict on two counts each of Attempted Murder in the Second Degree, Assault in the First Degree, and Assault in the Second Degree, and on three counts of Attempted Assault in the First Degree.

6

Alexis was sentenced to an aggregate term of thirty-four years in prison, to be followed by five years of post-release supervision.  Following his conviction, Alexis was again hospitalized due to his psychiatric disorder.

Alexis appealed to the Appellate Division, which affirmed, and his ensuing application for leave to appeal to the Court of Appeals was denied.  In 2011, Alexis filed a petition for a writ of habeas corpus, which was referred to Magistrate Judge Maas.

DISCUSSION

In his habeas petition, Alexis presents what amounts to five claims.  They are: (1) the trial court erroneously found him competent to stand trial; (2) the trial court improperly failed to hold a second hearing to reassess his competency in light of subsequent signs of potential incompetency; (3) the Appellate Division erred in failing to consider the fact that he had been hospitalized again following his conviction; (4) the jury erred in rejecting his affirmative defense of insanity; and (5) the prosecution failed to prove his criminal intent beyond a reasonable doubt.  The Report found that the fifth claim was unexhausted and should be denied as procedurally defaulted.  It recommended that the other four claims be denied under the standards that apply to habeas claims.

Alexis's objection pertains only to the portion of the Report dealing with his argument that the trial court should

7

have held a second hearing to reassess his competency to stand trial.  No objection has been made to the rest of the Report.  "To accept those portions of a report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." Deng v. 278 Gramercy Park Grp., LLC, No. 12cv7803 (DLC), 2014 WL 4996255, at *3 (S.D.N.Y. Oct. 7, 2014) (citation omitted).  Here, there is no clear error on the face of the record with regard to the un-objected to portions of the Report.  Those portions are thus accepted.

With regard to the objected-to portion, the court must "make a de novo determination."  28 U.S.C. § 636(b)(1).  Alexis argues that he was denied due process by the trial court's failure to conduct an additional competency hearing after (i) learning of his hospitalization following the initial hearing and (ii) observing his behavior at trial.  This claim was also pursued in state court, where it was rejected on the merits.

Where a state court has reached the merits of a claim, habeas relief may not be granted unless the state court's decision was "contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)-(2).  Alexis

does not appear to contend, nor could he, that the state court's decision was based on an unreasonable determination of facts in light of the evidence, precluding relief under § 2254(d)(2).  As for relief under § 2254(d)(1), the term "clearly established federal law as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. 362, 412 (2000).

The Appellate Division disposed of Alexis's due process claim as follows:

> Neither defendant's brief psychiatric hospitalization two months after the competency determination nor his behavior at trial required the court to order a further competency hearing or to reevaluate its prior ruling.  The fact that a defendant receives psychiatric treatment from correctional authorities shortly after a finding of competency does not necessarily call that finding into question.  At most, the posthearing events confirmed the undisputed fact that defendant was psychiatrically ill, but they cast no doubt on the finding that his illness did not prevent him from understanding the legal process or assisting his attorney in his defense.

People v. Alexis, 921 N.Y.S.2d 210 (N.Y. App. Div. 2011) (citation omitted).  Nothing in this decision of the Appellate Division is contrary to or an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court, which has never held that a second competency hearing is required by psychiatric hospitalization following an

9

initial competency hearing, disruptive behavior at trial, or a combination of these events.

The cases of Pate v. Robinson, 383 U.S. 375 (1966) and Drope v. Missouri, 420 U.S. 162 (1975), cited by Alexis, are not to the contrary.  In neither of those cases had the trial court conducted a pretrial competency hearing.

In Robinson, a state statute called for a hearing to be held if evidence raised a bona fide doubt as to a defendant's competency, but, despite having received abundant evidence of Robinson's persistent mental instability, the state court concluded that a hearing was not necessary because of his relatively alert demeanor before the court.  383 U.S. at 378-85.  The Supreme Court held that the state court's failure to invoke the statutory procedure in light of the overwhelming evidence of mental instability unconstitutionally deprived Robinson of an inquiry into his competency.  Id. at 385-86.  The Court observed, "While Robinson's demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue."  Id. at 386.

In Drope, the defendant was psychiatrically unstable and attempted to commit suicide and was hospitalized during the trial, which forced him to miss the remainder of the trial.  420 U.S. at 164-67.  No hearing on the defendant's competency was

held until after he brought a post-conviction motion for relief, which was denied.  Id. at 168-69.  The Supreme Court concluded that there was "sufficient doubt" of the petitioner's competence to stand trial "to require further inquiry on the question."  Id. at 180.  The Court explained:

> The import of our decision in Pate v. Robinson is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient.  There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.  That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

Id. at 180.

Alexis's case is sufficiently distinguishable from Robinson and Drope that the state court's rejection of Alexis's due process claim was neither contrary to nor an unreasonable application of the holdings in those cases.  Unlike the state courts in those cases, here, the trial court held a pretrial competency hearing and received opinion evidence as to Alexis's competency to stand trial.  Nothing in the holdings of Robinson and Drope required the trial court to hold a second hearing after learning of Alexis's hospitalization for a mental illness that the court had already ruled did not, standing alone, render

11

Alexis incompetent, or witnessing his demeanor during trial. Moreover, while Alexis was absent from the courtroom during the testimony of several witnesses, unlike in Drope, the trial judge and defense counsel could still observe Alexis to gauge from his demeanor whether he was able to assist his attorney and to understand the nature and object of the proceedings against him. It is noteworthy that Alexis's counsel never requested a second competency hearing.

CONCLUSION

The Report is accepted.  Alexis's petition for a writ of habeas corpus is denied, and, as Alexis has not made a substantial showing of a denial of a federal right, a certificate of appealability shall not issue.  See 28 U.S.C. § 2253(c)(2); Hoffler v. Bezio, 726 F.3d 144, 154 (2d Cir. 2013).  The Clerk of Court shall dismiss the petition and close the case.

SO ORDERED.

Dated:    New York, NY
          October 20, 2014

_____
DENISE COTE
United States District Judge

COPY SENT TO

Kenny Alexis
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

13